UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN M. SCOTT and OMID KAMSHAD,<br><br>Defendants. | ORAL ARGUMENT REQUESTED<br><br>Civil Action No.: 03 CV 12082 (EFH) |

**JUSTIN M. SCOTT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

Defendant Justin M. Scott ("Scott") respectfully submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. As demonstrated herein, the claim that Scott violated Section 206(1) of the Investment Advisors Act of 1940 (15 U.S.C. § 80b-6(1)) (the "Advisors Act") must be dismissed because the Securities and Exchange Commission (the "Commission") has failed to plead *scienter* – a requisite element of its claim under Section 206(1) – with the particularity the law requires. Further, the Commission's Section 206(2) claim under the Advisors Act (15 U.S.C. § 80b-6(2)) also must be dismissed because the Commission has failed to identify any actions by Scott that "*operated* as a fraud or deceit upon a client or prospective client," and, accordingly, has failed to state a claim upon which relief may be granted[1/]

## I. INTRODUCTION

To state an *actionable* claim that Scott violated Section 206(1) of the Advisors Act, the Commission was required to plead facts sufficient to show that Scott engaged in the challenged

---

[1/] Scott incorporates by reference and adopts the arguments set forth in co-defendant Omid Kamshad's Motion to Dismiss being filed contemporaneously herewith.

trading activity with the requisite fraudulent animus. The Commission has not done so – and that is fatal. The First Circuit routinely has enforced a rigorous standard for pleading *scienter*: a litigant must allege facts that support a *strong inference* that the defendant acted with fraudulent intent. The instant Complaint ignores this standard, opting instead for a generalized assertion that Scott engaged in a "scheme to defraud." Insofar as the Commission does not claim that short-term trading is illegal,[2] violative of Commission regulations or extant internal employee trading rules at Putnam, merely rehearsing the statutory language will not suffice. This is particularly true in this case, where the Commission does not allege that Scott either intended to disadvantage, or in fact disadvantaged, Putnam or *any* Putnam mutual fund investors.

Although claims under Section 206(2) of the Advisors Act are not subject to the same particularity pleading strictures, the statutory language still requires the Commission to identify "transactions, practices, or courses of businesses which *operated* as a fraud or deceit upon a client or prospective client." 15 U.S.C. § 80b-6(2). Here, however, the Commission does not contend that short-term trading is violative of or prohibited by the terms of *any* Putnam mutual fund prospectuses. To the contrary, according to the Complaint, the conduct potentially threatens the interests of fund shareholders only when trading becomes "excessive." Although the Commission fails to define "excessive" trading, logic dictates that the demarcation point where the Commission believes permitted conduct becomes potentially "prohibited" must, of necessity, be consonant with harm to the fund shareholders. As the Complaint decidedly does not allege that *any* shareholder sustained harm as a result of the alleged activity, the Commission has failed to allege an actionable claim under Section 206(2).

---

[2] To the contrary, Stephen Cutler, the Commission's Director of Enforcement, has conceded publicly that "market timing" is not illegal: market timing "is really not per se illegal. People talk about it in a way that suggests that it's on its face the equivalent of insider trading or ax murder, and it's not. It's effectively day-trading." *Bloomberg*, November 8, 2003.

2

Because the Commission has failed adequately to plead violations of Sections 206(1) or 206(2), the Complaint should be dismissed in its entirety.

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT

The salient allegations of the Complaint ("Compl.") are as follows: [3]

At all relevant times, Scott was a senior investment executive and portfolio manager for Putnam Investment Management, LLC ("Putnam"). Compl., ¶ 1. From at least 1998 until mid-2000, the Commission alleges that Scott engaged in short-term trading of mutual funds in his personal account involving mutual funds over which he had investment decision-making responsibility and access to non-public information. Compl., ¶ 15. The Commission does not allege that Scott *actually* utilized or relied upon material non-public information in connection with these transactions. See Compl., ¶ 2.

Although lacking in detail, the Commission alleges that Scott made approximately 35 "round trip" trades in Putnam funds between 1998 and 2000, including 12 trades that involved buying and selling mutual fund shares on consecutive days. Compl., ¶ 26. Several of these "short-term" trades purportedly were made after Scott was copied on a memorandum that stated that short-term trading in large amounts was "inconsistent with [Putnam's] tolerances for standard mutual fund clients" – although the Commission tellingly does not allege that Scott actually received this memorandum. Compl., ¶ 27. The Commission also contends that Scott purportedly did not disclose his trading activities to fund boards or fund shareholders (Compl., ¶

---

[3] For purposes of this motion, only well pleaded allegations of fact in the Complaint are taken as true. The Court need not, however, "accept as true 'naked assertions' without supporting facts." Pollack v. Laidlaw Holdings, Inc., No. 90-5788, 1995 U.S. Dist. LEXIS 5909, *3 (S.D.N.Y. May 3, 1995) (citing Yusuf v. Vasssars College, 35 F.3d 709, 713 (2nd Cir. 1994)); see also 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 319-320 (2d ed. 1990) (the Court need not "accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself").

3

17),[4] yet concedes that Putnam's Code of Ethics did not prohibit employee market timing until 2002, some two years after Scott's alleged trades occurred. Id. at ¶ 32.

Notably, the Commission does not claim that short-term trading is illegal or violative of any statute or regulation. The Commission similarly does not contend that short-term trading is detrimental *per se*, only that "excessive" short-term trading *could* cause dilution to a mutual fund, *could* raise transaction costs, or *could* disrupt a portfolio's management strategy. Compl., ¶ 14. Finally, and significantly, the Commission does not allege that Putnam, *any* Putnam fund or *any* fund shareholder sustained cognizable harm as a result of Scott's alleged conduct.

### III. ARGUMENT

#### A. THE COMMISSION'S SECTION 206(1) CLAIM MUST BE DISMISSED BECAUSE THE COMMISSION HAS FAILED TO PLEAD *SCIENTER* – A REQUISITE ELEMENT OF A 206(1) VIOLATION – WITH THE PARTICULARITY RULE 9(b) DEMANDS

In relevant part, Section 206(1) of the Advisors Act provides: "[i]t shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly – (1) to employ any device, scheme, or artifice to defraud any client or prospective client." 15 U.S.C. § 80b-6(1). To establish liability under Section 206(1), the Commission must, *inter alia*, plead and prove *scienter*. See, e.g., Sec. & Exch. Comm'n v. Moran, 922 F. Supp. 867, 896 (S.D.N.Y. 1996) ("a showing of *scienter* on the part of the defendant is required to establish liability under Section 206(1)"); see also Sec. & Exch. Comm'n v. Steadman, 967 F.2d 636, 641 (D.C. Cir. 1992). More importantly, because the claim sounds in fraud, the Commission also must comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Sec. & Exch. Comm'n v. U.S. Envtl.,

---

[4] As the Commission does not allege that fund shareholders were "clients" or "prospective clients" of Scott, any alleged non-disclosures to fund shareholders would not subject Scott to liability under Sections 206(1) or 206(2) in any event.

4

Inc., 82 F. Supp.2d 237, 239 (S.D.N.Y. 2000) (Commission not exempt from Rule 9(b)'s pleading strictures); Sec. & Exch. Comm'n v. Terezakis, No. 95-2533, 1997 WL 720760 (E.D.N.Y. 1997) (same). As demonstrated below, the Commission has not met this heightened pleading burden.

By its terms, Rule 9(b) creates an exception to Rule 8(a)'s liberal notice pleading norms for those litigants who aver fraudulent conduct: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The threshold pleading requirements are high, and "[t]his circuit has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions." Greebel v. FTP Software, Inc., 194 F.3d 185, 192 (1st Cir. 1999) (citations omitted). This heightened pleading standard "requires the plaintiff in a securities fraud case to specify the time, place and content of an alleged false representation." Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991). More importantly, the complaint must allege facts that "present a strong inference of scienter." Greebel, 194 F.3d at 196.[5] *Scienter*, as defined by the Supreme Court, constitutes "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Importantly, for purposes of this motion, "[a] mere reasonable inference [of scienter] is *insufficient* to survive a motion to dismiss." Greebel, 194 F.3d at 196 (emphasis added). See also Shields v. Citytrust Bankcorp Inc., 25 F.3d 1124, 1128 (2nd Cir. 1994) (To adequately plead *scienter*, law is settled that plaintiff must plead the factual basis which "give[s] rise to a *strong inference* of fraudulent intent") (emphasis added).

---

[5] Although the Greebel Court admittedly was addressing the particularity pleading requirements for *scienter* in the context of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court expressly stated that "[t]he PSLRA's pleading standard is congruent and consistent with the pre-existing standards of this circuit." Greebel, 194 F.3d at 193.

5

Gauged by Rule 9(b)'s heightened pleading strictures, the Commission's Complaint falls well short. Instead of the requisite facts supporting a strong inference of fraudulent intent, the Commission merely recites statutory boilerplate, averring that Scott acted "with the intent to deceive, manipulate or defraud. . . ." Compl., ¶ 40. Fairly read, however, the Complaint offers no facts which would support such an inference. On the contrary, the Commission does not even contend that short-term trading is improper (only that "excessive" short-term trading is harmful), or that SEC rules or regulations prohibit the practice. The Commission also does not allege that employee trading is improper, or that Scott took any steps to conceal his trading activities from Putnam. Finally, the Commission does not contend that Putnam management or any Putnam fund prospectuses prohibited short-term trading during 1998-2000. In fact, the Commission concedes that Putnam did not address so called "market timing" issues in its Adviser Code of Ethics until April 2002. Compl., ¶ 32.

At most, therefore, the Complaint might support an inference that Scott sought to profit from his trading. The mere desire for personal gain, however, has never sufficed to support the requisite strong inference of fraudulent intent. See, e.g., Greebel, 194 F.3d at 197-98 (pleading insider trading, alone, not sufficient to establish strong inference, further evidence required to establish standard); Acito v. Imcera Group, Inc., 47 F.3d 47, 54 (2nd Cir. 1995); San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801, 813-14 (2nd Cir. 1996).

By any measure, the facts plead in the Complaint do not suffice to meet the First Circuit's stringent demands that a plaintiff establish a strong inference of *scienter* at the pleading stage. Accordingly, the Commission's Section 206(1) claim asserted against Scott should be dismissed.

### B. THE SECTION 206(2) CLAIM MUST BE DISMISSED BECAUSE THE COMMISSION HAS FAILED TO PLEAD AN ACTIONABLE WRONG

Citing to the same alleged trading activity, the Commission also contends that Scott violated Section 206(2) of the Advisors Act by "engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon a client or prospective client." Compl., ¶ 40. The problem, however, is that the Commission fails to offer even the most rudimentary allegations explaining how, why – or even if – *any person or entity* was defrauded or deceived by Scott's alleged trading activity. Because the Commission does not (and indeed, cannot) contend that short-term trading is illegal or improper, Scott submits that the Commission's Section 206(2) claim should be dismissed as well.

Scott is mindful that the element of actual injury ordinarily is not a prerequisite to an SEC enforcement action under Section 206(2). Sec. & Exch. Comm'n v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 191-92, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963) ("it would defeat the manifest purpose of the Investment Advisors Act for us to hold . . . that Congress, in empowering the courts to enjoin any practice which operates 'as a fraud or deceit,' intended to require proof of intent to injure and actual injury to clients"); see also Geman v. Sec. & Exch. Comm'n, 334 F.3d 1183, 1191 (10th Cir. 2003) (Commission "is not required to prove reliance or injury in enforcement actions.") Scott submits, however, that the logic of such holdings flows from an underlying premise that the alleged conduct is wrongful. Once a wrong has been established, Congress properly determined that the remedial purpose of the Advisors Act would be stymied if the Commission could not address the wrong before harm occurred. See German, 334 F.3d at 1191 (purpose of not requiring Commission to establish harm is to permit the

7

Commission to act to prevent harm in those cases where "deceptive practices are *virtually certain* to lead" to harm) (emphasis added).

Here, by contrast, the Commission does not allege that short term trading is illegal, improper or otherwise wrongful. The Commission likewise does not contend that trading by mutual fund employees is wrongful. Perforce, employee short term trading, in and of itself, obviously cannot operate as a fraud or deceit upon mutual fund shareholders. There must be an additional quality which the Commission believes renders the conduct actionable. Unfortunately, this quality remains undefined in the Complaint. The closest the Commission comes to rendering a definition is to suggest that "excessive" short-term trading "may" be detrimental to fund shareholders. That, of course, begs the questions: how much short-term trading is "excessive," and when does such "excessive" trading become actionable? The only certain guidance that can be gleaned from the Complaint is that "excessive" trading that *actually* causes: (1) fund dilution; (2) increased transaction costs; or (3) disruption to a fund's stated portfolio strategy may be detrimental to long-term shareholders. Compl., ¶ 14.[6]

As pled in the Complaint, the Commission has accused Scott of violating Section 206(2) by engaging in conduct that only becomes wrongful -- in the Commission's view -- once a certain ill-defined threshold has been crossed. The Commission has not alleged that the threshold can be measured quantitatively (e.g., 20 trades, 500 shares, etc.). Rather, the Commission suggests that the threshold is qualitative, one that must be measured by actual harm to fund shareholders. Having defined the threshold, however, Scott contends that the Commission also was required to allege how Scott's activity crossed that threshold, by causing *actual harm* to the Putnam funds, in order to state an actionable claim for fraud and deceit under

---

[6] Scott does not concede that such conduct would suffice to prove a violation of Section 206(2) in any event.

Section 206(2). Because the Commission has not done so, the Section 206(2) claim should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendant Justin M. Scott respectfully requests that this Court dismiss the Section 206(1) claim for failure to plead facts sufficient to support a finding of scienter, the Section 206(2) claim for failure to state a claim upon which relief may be granted, and grant such other and further relief as justice requires.

Respectfully submitted,

**JUSTIN M. SCOTT**

By his attorneys,

_____
John F. Sylvia, BBO #555581
Sarah B. Herlihy, BBO #640531
Mintz, Levin, Cohn, Ferris,
 Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (facsimile)

Dated: January 20, 2004

LIT 1439293v1

