**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

JUSTIN M. SCOTT and OMID KAMSHAD,

Defendants.

---

Civil Action No.:  03 CV 12082 (EFH)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL**
**THE PRODUCTION OF DOCUMENTS FROM ANALYSIS GROUP, INC.**
**AND PETER TUFANO**

Defendants Justin M. Scott and Omid Kamshad ("Defendants") respectfully submit this memorandum of law in support of their motion to compel the production of certain critical documents in the possession of third parties Analysis Group, Inc. and Professor Peter Tufano. (Analysis Group and Tufano are represented by the same counsel in this matter and are sometimes collectively referred to herein as "Respondents")

The documents in question concern, and presumably support, a March 2005 damages analysis, prepared by Tufano pursuant to an SEC administrative order, of alleged excessive short-term trading and market timing by employees of Putnam Investment Management, LLC ("Putnam").  The SEC, which has also been seeking documents from the Respondents by subpoena, intends to rely upon Tufano's analysis and testimony at trial of this action.  Moreover, the SEC has repeatedly stated that it cannot comply with its *initial* disclosure obligations under Rule 26, and with this Court's July 28, 2004 Order that it provide Defendants with a computation

of damages, until it receives information from Respondents concerning damages that Tufano attributes to the Defendants.

By subpoenas dated March 24, 2005, Defendants requested that Respondents produce discoverable documents related to their work.  See Subpoena to Peter Tufano, Exhibit A; Subpoena to Keeper of Records, Analysis Group, Exhibit B.  To date, Respondents have refused to comply with the subpoenas and have refused to produce any documents.[1]  Instead, after negotiations that have gone on for months (in large part due to Respondents' frequent failure to respond substantively to the Defendants' diligent pursuit of the subpoenas), Respondents have taken the following unreasonable positions:

A.   Respondents stated that they would produce certain categories of documents responsive to the subpoenas, but only if Defendants' counsel would agree in writing, and before seeing any documents, that (1) the (anticipated) production would satisfy all obligations under the subpoenas and (2) Defendants would relinquish any rights to obtain in the future other admittedly existing and responsive documents, including emails.

B.   Respondents refused to abide by an agreement made in April among counsel for the Defendants, Respondents, Putnam, and the Putnam trustees to lighten the burden on Respondents in responding to the subpoenas whereby Putnam first would produce and provide a list of documents that it had turned over to Respondents.  Respondents were relieved of having to produce documents on the Putnam list and, in return, agreed to produce a list of the documents they had that were not duplicative of those identified by Putnam and to indicate which

---

[1] Analysis Group has provided several CDs containing data that it had been provided by Putnam, some of which it had reformatted before beginning its analysis.

documents on its list they would produce, without objection. <u>See</u> Letter from J. Gilmore to J. Kotlier, J. Donovan and E. Colby, April 13, 2005 ("April Letter Agreement"), <u>Exhibit C</u>. Putnam performed under the agreement and delivered its list to Respondents in May.  <u>See</u> Letter from J. Carroll to J. Gilmore, May 27, 2005 ("Putnam Production Letter"), <u>Exhibit D</u>.  Respondents have never delivered their list despite repeated requests for it.

C.   Respondents insisted at the beginning that Defendants pay their reasonable costs of responding to the subpoenas.  <u>See</u> Letter from J. Kotlier to J. Gilmore, April 22, 2005 ("Reimbursement Agreement"), <u>Exhibit E</u>.  Defendants agreed to this request before understanding that Respondents would refuse to comply.  Earlier this month, and despite the fact that they have not produced any responsive documents, Respondents sent Defendants a bill for more than $40,000 for its "[r]esponse" to the subpoenas. <u>See</u> Analysis Group Invoice to J. Gilmore, August 2, 2005, <u>Exhibit F</u>.

For the reasons stated herein, Defendants request that this Court order Respondents to comply with Defendants' subpoenas forthwith and produce the documents in question.

## BACKGROUND

### 1. The Nature of the Case and Relevant Facts

Following reports of alleged excessive short-term trading by Putnam employees, the SEC launched an investigation into, and initiated two separate actions against, Putnam and the Defendants.

~BOST1:388437.v1

In late 2003, Putnam reached a settlement with the SEC.  As part of this settlement,

Putnam agreed to:

> retain, within 30 days of the date of entry of the Order, the services of an
> Independent Assessment Consultant acceptable to the staff of the Commission
> and the independent Trustees of the Putnam funds. The Independent Assessment
> Consultant's compensation and expenses shall be borne exclusively by Putnam.
> The Independent Assessment Consultant shall calculate the monetary amounts
> necessary to fairly compensate Putnam funds' shareholders for losses attributable
> to excessive short-term trading and market timing trading activity by Putnam
> employees according to a methodology developed in consultation with Putnam
> and acceptable to the staff of the Commission and the independent Trustees of the
> Putnam funds. Putnam shall cooperate fully with the Independent Assessment
> Consultant and shall provide the Independent Assessment Consultant with access
> to its files, books, records, and personnel as reasonably requested for the review.

See In the Matter of Putnam Investment Management, LLC, Admin.Pro.File No. 3-11317,

2003 WL 22683975, *11 (November 13, 2003) ("Putnam Settlement Order").  Putnam, its

Trustees, and the SEC agreed that Putnam would retain Tufano as the Independent Assessment

Consultant.  Tufano was tasked to "define and calculate the losses attributable to excessive short-

term trading and market timing trading by Putnam employees."  Report of Peter Tufano,

Independent Assessment Consultant, In the Matter of Putnam Investment Management, LLC,

Admin. Pro. File No. 3-11317, March 2, 2005 ("Tufano Report"), at p.1.  In doing so, Tufano

"was assisted by Analysis Group, Inc., which performed certain calculations under [his]

direction."  Tufano Report, at p. 2.

**2. Professor Tufano and Analysis Group**

Tufano released his Report on March 2, 2005.  See Tufano Report.  Having been apprised

that the SEC intended to call Tufano as a witness in this action, on March 24, 2005, Defendants

subpoenaed Tufano, Analysis Group, Putnam and its Trustees to produce documents relevant to

the Tufano Report.  Respondents objected to these requests on two grounds:  (1) that Tufano was

not a "retained expert" in the current case and thus they were not required to make any

disclosures under Federal Rules of Civil Procedure 26 and 45; and, (2) that Defendants'
subpoenas were overbroad and unduly burdensome.  <u>See</u> Letters from J. Kotlier to J. Gilmore
regarding Analysis Group and Tufano Subpoenas, April 7, 2005, <u>Exhibit G</u>.  Despite these
objections, Respondents asserted they would cooperate with Defendants to produce "certain
documents."  <u>Id.</u>

     After extensive discussion about ways to minimize the burden on the subpoenaed third
parties, counsel for Defendants, Respondents, Putnam, and the Putnam Trustees agreed that
Putnam would produce its responsive documents first and provide the others with an index of the
production.  Respondents agreed they would subsequently provide a list of documents in their
possession not on Putnam's list and indicate whether they would produce the documents or
object to their production.  <u>See</u> April Letter Agreement (*Exhibit A*).

     Within two weeks of the April Letter Agreement, in a further effort to minimize the
burden on Respondents, Defendants agreed to reimburse Respondents for their expenses and
costs, including attorneys fees, in connection with their response to the subpoenas.  <u>See</u>
Reimbursement Agreement (*Exhibit D*).

     Putnam produced responsive documents and an index in late May.  <u>See</u> Putnam
Production Letter (*Exhibit B*).  When Respondents did not then produce their list of responsive
documents as per the parties' April Letter Agreement,[2] Defendants renewed their request that
counsel for Respondents do so.  <u>See</u> Letter from J. Gilmore to J. Kotlier, J. Donovan, and
E. Colby, June 6, 2005, <u>Exhibit H</u>.  Again, Defendants' request was ignored.

     On June 20, 2005, after Defendants received a voicemail from Respondents' counsel that
Respondents would produce the list of responsive documents, Defendants provided

---

[2] On June 3, 2005, Analysis Group provided Defendants with 18 CDs of data which Putnam had previously given to
Analysis Group (to assist AG in its work for Tufano) and some of which Analysis Group had reformatted.

Respondents' counsel with a detailed schedule of documents expected to be included in the list and reiterated the parties' April Letter Agreement. See Letter from J. Gilmore to J. Kotlier, June 20, 2005, Exhibit I.

After further prodding by Defendants, counsel for Respondents agreed to meet with Defendants' counsel on August 1, 2005 to discuss the status of Respondents (non)response to the March 24, 2005 subpoenas. At the meeting, counsel for Respondents confirmed that Respondents possessed but refused to produce the following documents responsive to the subpoenas:

(a)   email communication between Tufano and Analysis Group;[3]

(b)   some 13,000 computer files related to (1) analyses and alternate damages theories that may or may not have been done at Tufano's direction and may or may not have been revised by him; (2) drafts and notes of presentations by Respondents to the Putnam Trustees and the SEC concerning the damages analysis; and (3) other unidentified materials;

(c)   Analysis Group's "Case Library" -- approximately two boxes of hard copy documents including law review articles, drafts of various ideas and information obtained from Putnam; and

(d)   "Publicly Available Data" they had purchased or otherwise obtained to support their analyses, including certain "trade-and-quote" data ("TAQ" data) and information from the Chicago Mercantile Exchange.

Counsel for Respondents agreed that they would produce their "back-up" file to the Tufano Report and would identify all third-party vendors from whom they had obtained

---

[3] In a further effort to lighten Respondents' burden, Defendants agreed with Putnam that in Respondents' initial production they would not have to look for emails between Respondents and Putnam that might not have been produced by Putnam.

6

additional data to support Tufano's efforts, but only on condition that the Defendants irrevocably waive their right to obtain documents described in the preceding paragraphs or otherwise challenge the sufficiency of the response to the subpoenas. According to Respondents' counsel, the back-up file contains information and analysis supporting the conclusions of the Tufano Report, as well as relevant transactional data obtained from Putnam and other sources, which Analysis Group had manipulated in conducting its analyses. Notwithstanding counsel's statements, and its indication that the back-up file could be readily provided via computer media, these documents have not been produced to Defendants.

In a final effort to effectuate a compromise with Respondents, Defendants offered to pay for an independent third party to restore and filter Respondents e-mails so as to minimize their burden of reviewing these documents. In addition, Defendants suggested that rather than produce the actual computer files created or reviewed by Respondents in examining alternate damages theories (category (b), above), Respondents simply could provide a printout of the file names, from which Defendants, in good faith, could identify for production only those files that appeared responsive.

Respondents rejected these offers. In addition, Respondents refused to produce any documents responsive to Defendants' Requests 15-17, concerning retainer agreements for Analysis Group and Tufano related to the damages assessment, Tufano's publications, and transcripts of any prior testimony by Tufano -- all documents that commonly are produced in cases such as this and which do not create any unreasonable burden on Respondents.

7

## ARGUMENT

"The basic philosophy of the present federal procedure is that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 103 F.R.D. 635, 637 (D. Mass. 1984) (quoting Donovan v. Prestamos Puerto Rico, Inc., 91 F.R.D. 222, 223 (D.P.R. 1981)); see also Fed. R. Civ. P. 26(b)(1) (authorizing discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action..."). "Thus, '[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.'" Gagne v. Reddy, 104 F.R.D. 454, 455 (D. Mass. 1984) (quoting Miller v. Doctor's Gen. Hosp., 76 F.R.D. 136, 138 (W.D. Okla. 1977)).

The categories of documents sought in Defendants' subpoenas to Respondents bear directly on the issues raised by the SEC in the instant case. Indeed, the SEC has indicated that Tufano will be called as a witness in its case against the Defendants, see Letter From I. Roffman to J. Gilmore, March 31, 2005, *Exhibit J*,[4] and has itself subpoenaed documents from Respondents. Tufano's testimony is critical in that he is expected to testify concerning alleged excessive short term trading and market timing by Putnam employees, including the Defendants, and the alleged damages that this trading caused. There is no dispute that his testimony and opinions are derived from and supported by work performed by and with Analysis Group. As a result, Defendants seek to explore the basis for Tufano's opinions through documents reviewed, research conducted and analysis performed by him and Analysis Group.

---

[4] At this stage, Defendants reserve their rights to object to the admissibility of Tufano's testimony.

~BOST1:388437.v1

I.      **Respondents Agreed to Produce Responsive Documents, But Have Since Refused to do so Absent a Prior "Guarantee" From Defendants That Defendants Would Not Challenge The Sufficiency of Whatever They Produce.**

During the past four-and-a-half months, Respondents have agreed to produce: (1) a list of responsive documents not already produced by Putnam (see April Letter Agreement); (2) its back-up file to the Tufano Report (August 1, 2005 Meeting); and (3) the identity of all third-party vendors from whom AG received relevant data and information (August 1, 2005 Meeting). Despite their agreement with Defendants, Respondents refuse to produce these agreed-upon documents unless Defendants guarantee, prior to receiving the documents, that Defendants will not seek any further documents responsive to the subpoenas or challenge the sufficiency of Respondent's compliance with the subpoenas. Nowhere in the Federal Rules (or elsewhere) exists support for the proposition that the subject of a subpoena may "hold hostage" responsive documents until the serving party agrees that "it will not ask for anything more."

II.     **The Protections of Fed.R.Civ.Pro. 45(C)(3)(B)(ii) Do Not Apply To The Categories of Documents Requested From Respondents, As The Documents "Concern Specific Events And Occurrences in Dispute" Resulting From an "Expert's Study," And Defendants Have Shown A "Substantial Need" For These Materials "That Cannot Be Otherwise Met."**

In opposing Defendants' subpoenas, Respondents claim that, under Federal Rule of Civil Procedure 45, they are not obligated to produce documents requested since Tufano is not a retained expert. Rule 45 states, in relevant part:

> (B) If a subpoena...
>       (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party...
> the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

9

Fed.R.Civ.P. 45(c)(3)(B).

> A.   *Fed.R.Civ.P. 45 does not protect from production*
> *the documents requested by Defendants.*

For a Court to limit the breadth of a subpoena pursuant to Rule 45(c)(3)(B)(ii), the

unretained expert's opinion or information requested cannot "describ[e] specific events or

occurrences in dispute" and the expert's study cannot have been "request[ed] [by] any party."

See id. Documents relating to the Tufano Report fall precisely into these two categories and thus

are not afforded the protections contemplated by the Rule. The Tufano Report does describe

specific events or occurrences in dispute in this case; namely, Tufano describes his opinion (as

well as the factual basis for that opinion and how he arrived at it) concerning excessive short

term trading by Putnam employees, how this trading caused shareholder losses, and what the

value of those losses were. See Tufano Report. These very issues lie at the heart of the instant

case, and in fact mirror the SEC's allegations against Defendants. Therefore, any documentary

evidence concerning this analysis necessarily relates to "specific events or occurrences in

dispute." In addition, Tufano's study was conducted at the request, and with the approval, of a

party in this action, the SEC. See Putnam Settlement Agreement, 2003 WL 22683975, *11;

Rule 45.

> B.   *In any event, Defendants have demonstrated a "substantial need" for the*
> *requested materials, that "can not be otherwise met."*

In any event, according to Rule 45(c)(3)(B), a court may compel production of

documents if "the party in whose behalf the subpoena is issued shows a substantial need for the

… material that cannot be otherwise met without undue hardship and assures that the person to

whom the subpoena is addressed will be reasonably compensated." Courts commonly consider

five factors in deciding whether there is "substantial need" under Rule 45(c)(3)(B):

~BOST1:388437.v1

(1) the degree to which the expert is being called because of his knowledge of <u>facts</u> <u>relevant</u> to the case rather than in order to give expert testimony, (2) the difference between testifying to a <u>previously formed or expressed opinion</u> and forming a new one, (3) the possibility that, for other reasons, the witness is a <u>unique expert</u>, (4) the extent to which the calling party is able to show the <u>unlikelihood that any comparable witness</u> will willingly testify, and (5) the degree to which the witness is able to show that he has been <u>oppressed by having to continually testify</u>.

<u>Brogren v. Pohlad</u>, 1994 WL 654917, *2 (N.D. Ill. 1994) (emphasis added); <u>see also</u> <u>Schering</u> <u>Corp. v. Amgen Inc.</u>, 1998 WL 552944, *2 (D. Del. 1998).

Respondents have extensive knowledge of facts relevant to this case. These third parties have admittedly examined, analyzed and manipulated data obtained from Putnam and other sources concerning policies, trading activity and damages at issue in this action. Second, the information sought does not require a new analysis or opinion to be formed -- Defendants merely request the back-up and analysis that Tufano and Analysis Group have considered and upon which Tufano has relied. Third, Respondents' analysis is very much "unique." <u>See</u> <u>Schering</u>, 1998 WL 552944 at *3 (holding that expert was not "unique" since he only had "knowledge of one of ordinary skill"). Tufano was <u>specially selected</u> as an Independent Assessment Consultant by Putnam and the SEC. He and Analysis Group were tasked with analyzing <u>precisely the issues</u> in this case -- the excessive short term trading by Putnam employees and damages caused by this trading. <u>See id.</u> Fourth, no comparable witness or evidence will satisfy Defendants' need for the back-up, analysis, and correspondence of this expert who will be called as an adverse witness in this matter. <u>See id.</u> (quashing subpoena of unretained expert where "[w]ith little effort, [subpoenaing party] could surely have found a willing expert to testify as to the knowledge available to persons of ordinary skill").

Finally, there is no dispute that Defendants have already agreed to reasonably compensate Respondents for their work in answering the Defendants' subpoenas. As stated in <u>Arkwright Mut. Ins. Co.</u>, "the primary remedy of an unretained expert under Rule 45(c)(3)(B)(ii)

11

to avoid such takings is to allow such experts 'the opportunity to bargain for the value of their services.'" <u>Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.</u>, 148 F.R.D. 552, 558 n.13 (S.D. W. Va. 1993). Here, Respondents have bargained for their services. However, Defendants have yet to see any results of their work in gathering documents.

**III.    Defendants Face Extreme Prejudice If They Are Not Allowed To Effectively Cross-Examine Professor Tufano Concerning The Bases For His Opinions And Analyses; In Light of the Looming Discovery Deadline, Further Delay in Obtaining the Documents in Question May Preclude Defendants From Completing Discovery in a Timely Fashion.**

The September 30, 2005 discovery cut-off in this case is fast approaching. Without the opportunity to obtain, review and analyze the requested documents, Defendants will be immeasurably hampered in their efforts to examine Professor Tufano either at deposition or at trial. Given the critical nature of Tufano's expected testimony concerning the issues of both causation and damages, any limitations imparted <u>now</u> on Defendants' request for documents concerning Tufano's opinions will seriously undermine the defense of this case.

## CONCLUSION

Defendants have made significant efforts to cooperate with Respondents to secure documents critical to Defendants' preparation of their defense while avoiding undue burden to Respondents -- Defendants have agreed to narrow the breadth of their requests and to compensate Respondents for their reasonable costs of production and have offered to pay a third-party vendor to sort and review emails so that Analysis Group would not have to. Despite these considerable efforts, Respondents not only have refused to comply with the subpoenas in any respect (other than providing data they had been provided by Putnam) but also have ignored the terms of the April Letter Agreement and subsequent verbal arguments with counsel.

Accordingly, Defendants' counsel respectfully seeks the intervention of this Court to order

Respondents to produce the requested documents.  In light of the length of time since the

subpoenas were served, the ease with which much of the responsive material can be transferred

by computer media, and the looming discovery deadline on September 30, 2005, Defendants ask

that Respondents be required to start producing documents within 10 days of the Court's Order.

<div style="margin-left: 40%;">

Respectfully submitted,

**JUSTIN M. SCOTT**

By his attorneys,

_____/s/ Adam L. Sisitsky_____
John F. Sylvia, BBO #555581
Jay Tangney, BBO #633152
Adam L. Sisitsky, BBO #637532
Jessica C. Lowney, BBO #655758
Mintz, Levin, Cohn, Ferris,
Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000


**OMID KAMSHAD**

By his attorneys,

_____/s/ Bruce S. Barnett_____
John A.D. Gilmore, BBO #193060
Kirsten M. Nelson, BBO #634520
Bruce S. Barnett, BBO #647666
DLA Piper Rudnick Gray Cary US LLP
One International Place
Boston, MA 02110
617-406-6000

</div>

Dated: August 19, 2005

<div align="center">13</div>